STEPHEN J. HALMEKANGAS                    CIVIL ACTION

VERSUS                                    NO: 06-3942

STATE FARM INSURANCE COMPANY              SECTION: J(2)

## ORDER AND REASONS

Before the Court is Defendant ANPAC Louisiana Insurance
Company's ("ANPACLA") **Motion for Summary Judgment** (Rec. Doc.
146), seeking dismissal of Plaintiff Steven Halmekangas'
("Halmekangas") claims for damages arising from issues related to
payment of proceeds under a homeowner's policy issued to
Halmekangas by ANPACLA.  In addition, ANPACLA's motion seeks
summary judgment for any claims against it that are related to
the alleged negligence of Steven Harelson as an agent of ANPACLA
in failing to procure adequate insurance for Halmekangas' insured
property.

Also before the Court is Halmekangas' **Motion for Relief from
this Court's 11/25/2008 Order and for Sanctions under Rule 56(g)**
(Rec. Doc. 168), which seeks an order vacating this Court's grant
of summary judgment in favor of Harelson on peremption grounds
(Rec. Doc. 123), as well as sanctions against ANPACLA, Harelson,
and Harelson's errors and omissions insurer American National

Property and Casualty Insurance Company[1] based on their filing of a false summary judgment affidavit.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

### A. Harelson's Summary Judgment Motion

Halmekangas' property was destroyed by the effects of Hurricane Katrina in August/September of 2005. On August 29, 2005, Hurricane Katrina initially struck the city of New Orleans, flooding the first floor of the property. Subsequent to the flooding, the property was completely destroyed by fire on September 2, 2005. Halmekangas filed claims for the loss of his property with both his flood (State Farm) and homeowners (ANPACLA) insurers. The instant suit, filed in this Court on July 25, 2006, arises from the handling of those claims.[2]

The starting point for both the present motions is this Court's order of November 25, 2009, which granted Harelson's motion for summary judgment based on peremption of Halmekangas' claims under Louisiana Revised Statutes § 9:5606. Essentially, Halmekangas' claims against Harelson alleged that Harelson had erroneously placed the coverage on Halmekangas' property. Specifically, Halmekangas claimed that the insured home was a

---

[1] For ease of reference and to avoid confusion, the Court will refer to both Harelson and his errors and omissions carrier as "Harelson."

[2] A more extensive and detailed background of the facts of this case is available in the Court's November 25, 2009 Order and Reasons.

three-story, 5,550 square foot home, but Harelson only placed coverage on a two-story, 3,400 square foot home. As such, Halmekangas claims that he was drastically underinsured after his home was destroyed by fire.

As was discussed at length in the Court's November 25, 2009 Order and Reasons (Rec. Doc. 123), the peremption finding hinged on the question of Halmekangas' receipt of the erroneous property description at the various times that copies of his policy and declarations sheets were mailed to him. The Court determined that there was no substantial issue of material fact as to whether Halmekangas had received the erroneous property description more than one year before filing suit against Harelson. The Court based this finding on, among other things,[3] the affidavit of Kirby McKenzie ("the McKenzie Affidavit"), custodian of the underwriting records and underwriting file of ANPACLA, which indicated that the declarations sheets along with the property description had been mailed to Halmekangas at least five times between January and June of 2005, all more than one

---

[3] As further developed in the Court's November 25, 2008 Order and Reasons, the McKenzie Affidavit was not the sole basis for the Court's peremption ruling. Most significantly, the Court also relied on Halmekangas' equivocal deposition testimony regarding his receipt of some sheets of the declaration page in January of 2005, as well as his failure to expressly deny receipt of the property description at the time he received the other policy documents. Furthermore, the Court relied on Halmekangas' discovery responses indicating that he received copies of the ANPAC policy more than a year before he filed suit.

year before he filed suit.

Subsequent to the Court's dismissal of Halmekangas' claims against Harelson, Halmekangas filed a Motion for Rehearing and/or New Trial, seeking a reconsideration of the Court's November 25, 2008 Order and Reasons, which this Court denied (Rec. Doc. 137).

**B.     ANPACLA's Motion for Summary Judgment and Halmekangas'
         Motion for Relief and Sanctions**

Presently before the Court is ANPACLA's Motion for Summary Judgment as to Halmekangas' claims under his homeowner's policy issued by ANPACLA. Essentially, ANPACLA's motion is based on the argument that since it has paid policy limits on the policy at issue, it has no further obligations to Halmekangas. More importantly, ANPACLA argues that because Halmekangas' claims against Harelson, the agent who allegedly placed the coverage based on an erroneous property description, are perempted, any derivative claims against ANPACLA for insurance proceeds in excess of the *actual policy limits* under the coverage placed by Harelson are also perempted as to ANPACLA and should be dismissed. As a result, ANPACLA's present motion is fundamentally linked to the Court's prior dismissal of the claims against Harelson on summary judgment.

Subsequent to filing its motion, ANPACLA contacted the Court to request a status conference concerning the McKenzie Affidavit and the Court's November 25, 2009 Order granting summary judgment

in favor of Harelson.  At the conference on February 4, 2009, the
parties informed that Court that the McKenzie Affidavit was
factually incorrect.  Specifically, due to a misunderstanding by
McKenzie regarding the mailing processes at ANPACLA, his
attestation that the policy and declarations sheets had been
mailed five times to Halmekangas by ANPACLA in 2005 was
incorrect.[4]  As a result, the Court issued a minute order (Rec.
Doc. 167) requiring the parties to submit supplemental affidavits
and briefing on ANPACLA's motion for summary judgment.  In
addition, the Court ordered the parties to enter an agreement
regarding Halmekangas' production of the originals of the policy
and declarations sheets mailed to him by Harelson, copies of

---

[4] McKenzie has since submitted a supplemental affidavit,
which explains the process by which ANPACLA policies and
declarations sheets are generated in the ANPACLA offices and then
mailed out.  Contrary to his first affidavit, McKenzie's second
affidavit attests that the policies and declarations sheets are
not mailed directly from ANPACLA to its insureds, but are rather
mailed by ANPACLA to the *agents* of the insureds.  McKenzie's
supplemental affidavit describes the process by which ANPACLA
distributes policy documents: (1) when a new policy is issued or
a current policy is altered, the declarations page is
electronically stored in ANPACLA's computer system; (2) the
declarations page and policy are then automatically printed
overnight in the "Computer Room"; (3) the various
policies/declarations pages are then collected for distribution;
and (4) the documents are forward to the insured's agent for
mailing to the insured.  As such, McKenzie's second affidavit
indicates that the policy and declarations sheets generated
between January and June of 2005 would have been mailed *to
Harelson* for forwarding to Halmekangas.

which Halmekangas had produced during discovery.[5]  Finally, the

Court ordered that after compliance with the production and

briefing requirements, Halmekangas could re-urge his previously

denied motion under Rule 60 for relief from the Court's November

25, 2009 Order and Reasons.

## **THE PARTIES ARGUMENTS**

### **A.   ANPACLA's Motion for Summary Judgment**

ANPACLA seeks summary judgment based on its payment of

policy limits under its homeowner's policy in favor of

Halmekangas.  Furthermore, to the extent Halmekangas has asserted

claims against ANPACLA for additional insurance proceeds related

to the allegedly erroneous placement of coverage by Harelson,

ANPACLA argues that because the claims against Harelson are

perempted, any related claims against ANPACLA are also perempted.

See  <u>Kobeszko v. State Farm Fire & Cas.</u>, 2007 WL 1486315 (E.D.

La., May 18, 2007) (Vance, J.); <u>Bernhard Mech. Conts., Inc. v.</u>

<u>St. Paul Cos.</u>, 2008 WL 3244145, *5 (5th Cir. 2008).  As a result,

_____

[5]  In fact, the briefing in Harelson's Motion for Summary
Judgment indicated that Harelson had mailed copies of the policy
and declarations sheet (including the property description) to
Halmekangas in January of 2005.  This fact was supported by both
Harelson's deposition testimony that he mailed the documents to
Halmekangas, as well as by Halmekangas' production during
discovery of _copies_ of the policy and declarations sheet that
were signed by Harelson.  Likewise, Harelson also testified at
his deposition that he personally mailed subsequent copies of the
declarations sheet and property description four times between
January and June 1 of 2005.  However, despite this testimony,
Harelson did not retain any record or log of the mailings.

and because Halmekangas has not made any allegations as to claims for statutory penalties or improper claims handling, Halmekangas' claims based on the fact that he was allegedly under-insured due to Harelson's error should be dismissed as to ANPACLA.

Because ANPACLA's motion is contingent upon the dismissal of Halmekangas' claims against Harelson, ANPACLA dedicates most of its memoranda in support to addressing the previously decided issue of peremption of those claims. While ANPACLA's initial memorandum in support related essentially the same facts and arguments that led to the grant of Harelson's summary judgment, its supplemental memorandum addresses the problems resulting from the errors in the McKenzie Affidavit. ANPACLA admits that the McKenzie Affidavit was erroneous due to McKenzie's mistaken understanding of the mailing process, but argues that the error does not affect the finding of peremption. Stated differently, ANPACLA argues that there was and is enough other evidence to support the Court's finding that Halmekangas had actual and/or constructive knowledge that the property description in his policy and declarations sheets was incorrect more than a year before he filed suit. First, ANPACLA notes that Harelson testified at his deposition that he personally mailed copies of the policy and declarations sheet, including the allegedly erroneous property description, on January 3, 2005, and also mailed subsequent copies of the declarations sheet and

description on four other occasions between January and June of 2005. Next, ANPACLA points to Halmekangas' interrogatory responses, which indicate that he received and read the policy and declarations in January and March of 2005.[6] Finally, ANPACLA points out that Halmekangas himself produced a copy of the declarations page signed by Harelson, which indicates that he at least received the first page of the Declarations in one of those 2005 mailings from Harelson. ANPACLA argues, in accordance with this Court's findings in the November 25, 2009 Order and Reasons, that if Halmekangas received both the *policy* and the *first page* of the declarations sheet (as evidenced by Harelson's signature on the document), then it borders on the incredible to suggest that he did not also receive the second page of the declarations sheet that contained the property description.

In addition, ANPACLA has submitted the affidavits of several employees in its systems and mailing departments that describe the system by which policies and declarations are generated and mailed by ANPACLA to its agents for forwarding to the insured. These affidavits further indicate that all such procedures were followed as usual with respect to Halmekangas' policy. ANPACLA argues that these affidavits are sufficient to trigger a legal presumption that Halmekangas received the policy and declarations

---

[6] Halmekangas' responses do, however, indicate that he did not recall the details of the policy and declarations documents he received in early 2005.

sheet, including the property description, on each of the five mailing dates between January and June 1 of 2005. See, e.g., Gulf Coast Inv. Corp. v. Sec'y of H.U.D., 509 F. Supp. 1321, 1325 (E.D. La. 1980); Williams v. Republic Fire & Cas. Ins. Co., 2008 WL 4299347, *5 (E.D. La., Sept. 12, 2008). ANPACLA argues that Halmekangas' self-serving testimony that he either did not see the property description or cannot remember whether he saw that description is insufficient to rebut this presumption of delivery.

In sum, ANPACLA argues that Halmekangas had actual and/or constructive knowledge of the allegedly erroneous property description based on (1) Harelson's testimony that he mailed the policy and declarations sheet on five separate occasions between January and June 1, 2005; (2) Halmekangas' own admissions at his deposition and in interrogatory responses that he reviewed the policy and declarations sheet in January and March of 2005; and (3) the legal presumption of delivery applicable through the affidavits of ANPACLA employees. As such, because Halmekangas did not file his present suit until June 21, 2006, which is more than one year past any of the January-June 1 2005 mailings, his claims against Harelson, and in turn ANPACLA, are perempted.

In opposition, Halmekangas argues initially that Louisiana Revised Statutes §9:5606 applies by its own terms only to claims against agents, and not those against insurers. Further, while

Halmekangas recognizes the Fifth Circuit's decision in <u>Bernhard</u>, he argues as a matter of policy that insurer's should not be protected from liability for errors committed on their behalf, especially under the plain terms of the statute.

Halmekangas then goes on to address the crucial question of when and whether he acquired actual and/or constructive knowledge that the property description in his policy was incorrect. As an initial matter, Halmekangas argues that there is no conclusive evidence that either Harelson or ANPACLA delivered the property description. Specifically, Halmekangas contends that Harelson's deposition testimony that he sent those documents is unsupported by any log or record of delivery. Similarly, Halmekangas notes that Harelson's deposition testimony revealed that he was unsure of what he forwarded to Halmekangas.[7] Further, Halmekangas points out that the certified copy of Halmekangas' policy mailed by ANPACLA during discovery did not include the property description page. As such, and given that this document was accompanied by a certification letter indicating that the copy was full and complete, Halmekangas argues that the property description was never a part of the policy he received in 2005. Also, Halmekangas argues that his interrogatory responses

---

[7] The Court disagrees with Halmekangas' characterization of Mr. Harelson's deposition testimony. Rather than testifying that he was unsure of what he sent to Halmekangas, Harelson testified that he "mailed [to Halmekangas] everything that ANPAC[LA] mailed." Rec. Doc. 106-5, Deposition of Harelson at p. 74.

indicate only that he received and reviewed the *policy*, not the *property description*. Finally, even if he did receive the description, Halmekangas argues that his receipt of the description page does not conclusively prove constructive knowledge of the erroneous description. Specifically, Halmekangas argues that as a result of Harelson's continued assurances that his home was properly insured, Halmekangas had no reason to know that the erroneous description would result in improper coverage. In support of this argument, Halmekangas relies on several cases that have denied summary judgment on peremption grounds when an agent's actions have lulled an insured into complacency regardless of the terms of the policy. See, e.g., <u>Romero v. Travelers Indem. Co. of Conn.</u>, 2006 WL 3692773 (E.D. La. Dec. 12, 2006); <u>Hoffman v. Alliance Ins. Agency Servs., Inc,</u> 2007 WL 2088373 (E.D. La. July 19, 2007); <u>So. Athletic Club, LLC v. Hanover Ins. Co.</u>, 2006 WL 2583406 (E.D. La. 2006).

Next, Halmekangas argues that the McKenzie Affidavit, which Halmekangas characterizes as an indispensable factor in the Court's grant of Harelson's summary judgment, has now been proven false and therefore the summary judgment must be vacated. Further, Halmekangas argues that ANPACLA's attempt to replace the substance of the original McKenzie Affidavit with the affidavits of other ANPACLA employees to establish an alleged presumption of delivery based on general mailing procedures is improper.

Specifically, Halmekangas points to recent case law from other sections of this Court that have denied summary judgment and refused to recognize a presumption of mailing and delivery in favor of an insurer based on evidence of general procedures. See Ruoss v. Standard Fire Ins. Co., 2007 WL 4144952, *3 (E.D. La. Nov. 20, 2007) (Duval, J.). Thus, because ANPACLA has presented no direct evidence of actual mailing of the property description sheet (outside of the false McKenzie Affidavit), the summary judgment in favor of Harelson should be vacated, and ANPACLA's present motion for summary judgment should be denied. In addition, Halmekangas distinguishes the presumption cases relied on by ANPACLA on the grounds that none involved the provisions of §9:5606, and all were either decided after trial on the merits or involved distinguishable evidence and circumstances.

Finally, Halmekangas suggests that ANPACLA's internal procedures on which it relies for a presumption of delivery are inherently flawed, as revealed by the record in this case. First, Halmekangas reiterates that the certified copy of the policy produced in discovery by ANPACLA *did not include the property description*.[8] Second, the original (and false) McKenzie Affidavit included as Exhibit 9 a copy of the declarations sheet mailed on January 31, 2005, which *also did not include the*

_____

[8] ANPACLA has responded that the absence of the property description in the certified copy of the policy was merely an oversight.

12

*property description*.  According to Halmekangas, these
inconsistencies create a material issue of fact regarding his
receipt and review of the property description, and thus summary
judgment was improper as to Harelson and is likewise improper as
to ANPACLA.  In the end, Halmekangas argues that he has
consistently indicated that he does not remember reviewing any
policy document that included the allegedly erroneous property
description.  Given the inconsistencies in ANPACLA's documents,
the fact that all inferences on summary judgment should be viewed
in his favor, and the fact that he does not have the ability to
review his files which were destroyed when his home burned down,
Halmekangas argues that summary judgment is inappropriate.

**B.   Halmekangas' Motion for Relief from the Court's
     November 25, 2008 Order and for Sanctions under Rule
     56(g)**

Based on the admitted falsity of the McKenzie Affidavit, as
well as for the other reasons outlined in his opposition to
ANPACLA's motion for summary judgment, Halmekangas seeks relief
from the Court's Order and Reasons of November 25, 2008 granting
Harelson's motion for summary judgment.  In addition, Halmekangas
seeks sanctions against Harelson and ANPACLA under Rule 56(g) of
the Federal Rules of Civil Procedure on the grounds that Harelson
and ANPACLA knew or should have known that the McKenzie Affidavit
was false.

Halmekangas cites Rule 60(b)(2) and (3) as grounds for

13

relief from the Court's order, alleging that relief from the order is appropriate based on discovery of new evidence (i.e. the falsity of the McKenzie Affidavit), or on Harelson and ANPACLA's misrepresentation in relying on a false affidavit in support of their motions for summary judgment. First, as to Harelson, Halmekangas points out that he challenged the validity of the McKenzie Affidavit in his original opposition to Harelson's motion for summary judgment. Specifically, Halmekangas argued that the McKenzie Affidavit, which indicated that ANPACLA had mailed the policy and declarations sheet several times in early 2005, actually *contradicted* Harelson's deposition testimony, which indicated that Harelson himself had made those mailings. Halmekangas argues that this contradiction is critical in light of the fact that Harelson had no record or log of his mailings to Halmekangas. Thus, because Harelson's testimony is necessarily speculative due to the lack of any documentation, Halmekangas argues that Harelson was forced to file the McKenzie Affidavit because he himself could not testify based on personal knowledge that he had made those mailings. Finally, Halmekangas contends that his arguments regarding the inconsistencies between Harelson's deposition testimony and the McKenzie affidavit, which he had made both in opposition to Harelson's motion and in support of his request for reconsideration of the Court's November 25 Order, were validated when ANPACLA informed the Court

14

after filing its present motion that the McKenzie affidavit was false.  Thus, Halmekangas argues that without the McKenzie Affidavit, which has now been proven false, there is no evidence in the record establishing that the property description was ever sent, and thus the Court's November 25, 2009 Order and Reasons should be vacated.

Next, Halmekangas seeks sanctions under Rule 56(g) for Harelson's filing of and ANPACLA's reliance on the McKenzie Affidavit.  Halmekangas argues that despite his contention that the McKenzie Affidavit was false both in the briefing on Harelson's summary judgment as well as in the preliminary briefing for the ANPACLA summary judgment, Harelson and ANPACLA ignored the issue.  As it turned out, McKenzie has admitted that he did not have the personal knowledge on which the McKenzie Affidavit was based.  Halmekangas argues that Harelson, ANPACLA, and their attorneys should have known that the McKenzie Affidavit was false, and that even if the affidavit was initially submitted in good faith, they should have pointed out the error *before* summary judgment was granted.  As such, Halmekangas contends that the McKenzie Affidavit was either initially or eventually submitted in bad faith, and requests his reasonable expenses and attorney's fees associated with defending against Harelson and ANPACLA's motions.

In opposition, Harelson points out that the Court's November

25, 2008 Order and Reasons was *not* based solely on the McKenzie Affidavit, but primarily on the fact that Halmekangas had both admitted to receiving *and produced* two of the declaration sheets and the policy that were signed and mailed to him by Harelson. Further, Harelson notes that Halmekangas' counsel recently produced a more complete copy of previously produced documents on March 17, 2009.[9]  Harelson reviewed these documents, verified his signature, and confirmed that they were the documents mailed by him to Halmekangas in January and March of 2005.  These documents *include the allegedly erroneous property description* that Halmekangas has consistently not admitted to remembering.  Thus, Harelson argues that this recent production confirms that the Court's original ruling on Harelson's motion for summary judgment was correct despite the issues with the McKenzie affidavit.

Furthermore, Harelson notes that Halmekangas has admitted to receiving at least two of the documents referenced in the McKenzie Affidavit, namely the first page of the declarations

---

[9] Harelson has provided an affidavit and exhibits in opposition to Halmekangas' motion.  These exhibits in include an email from Halmekangas to his counsel dated October 16, 2007, that includes copies of the original policy and declarations as well as an amended declarations page and policy.  Harelson's affidavit confirms that these documents were the ones mailed by him to Halmekangas in March and January of 2005, as evidenced by his signature on the documents.  Harelson asserts that only Halmekangas could have had these documents because he did not make any copies of the signed documents that he forwarded to Halmekangas.

sheet received on January 3, 2005 and again on March 22, 2005.[10] Additionally, Harelson notes that in October of 2007, Halmekangas produced incomplete copies of the declaration sheet and policy from January 3, 2005 and the ones from March 22, 2005, both of which included Harelson's signature on the first page.  Pursuant to this Court's minute order of February 4, 2009, Harelson and ANPACLA have been attempting to inspect the *originals* of the documents produced in October of 2007.  However, Halmekangas' counsel cannot locate the original documents; that is, he cannot produce the originals of the documents that he produced via copy. Further, he cannot produce the originals of the documents that Halmekangas testified he made notes on and therefore knew he had before Hurricane Katrina.[11]  Despite this lack of original documents, and as noted above, Halmekangas' current counsel recently produced the email and attachments which Halmekangas sent to his former counsel that precipitated the October 2007 production.  The documents from the email **differ from the versions of the same documents produced in October 2007.** Specifically, the newly produced documents from Halmekangas' email to his former counsel include a print date at the top of the property description page that corresponds with the January 3

---

[10]  See the Court's November 25, 2008 Order and Reasons at note 3.

[11]  See id.

17

and March 22, 2005 dates at the top of the first page of the declarations sheet signed by Harelson. Harelson argues that these newly discovered dated documents prove that the property description pages were *printed* and therefore indisputably *included and mailed with* the first page of the declaration sheet, which Halmekangas has admitted to receiving and which bears Harelson's signature.

Most importantly, Harelson notes a significant difference between the documents produced in October of 2007, and the versions of those same documents as they appeared in Halmekangas' email to his counsel in October of 2007, which was recently provided to Harelson and ANPACLA. The documents from the original October 2007 production appear to have been cropped at the top during printing to remove a date printing stamp. However, the documents as they appeared in the original email between Halmekangas and counsel include a date stamp at the top of the property description pages of the declarations sheet. This date stamp on the recently produced email versions of the documents indicates that the property description page *was printed on January 3, 2005 and again on March 22, 2005.* In combination with Halmekangas' admission that he received the first page of the declarations sheet on each of those dates as well as Harelson's signature on those pages, this date stamp indicates that Halmekangas did in fact have the property

description together with the documents he has admitted receiving in January and March of 2005.  To the extent this and other differences between the October 2007 production and the recently revealed October 2007 email indicate possible spoliation of evidence, Harelson suggests that further inquiry may be necessary pending the outcome of the present motions.

Finally, Harelson opposes Halmekangas' request for sanctions under Rule 56(g) by noting simply that Halmekangas has not produced any evidence of bad faith by Harelson or Harelson's counsel.  The McKenzie Affidavit was produced and signed by the agent of another party (ANPACLA).  Further, once the affidavit was determined to be mistaken, that other party informed the Court and all counsel so that proper actions could be taken. Thus, Harelson argues that there was no bad faith on his part, nor on the part of ANPACLA, sufficient to support Rule 56(g) sanctions.

For its part, ANPACLA opposes Harelson's motion for sanctions based on its timely disclosure of the issues with the McKenzie Affidavit.

In reply, Halmekangas reiterates his position that the McKenzie Affidavit was critical to the Court's prior grant of Harelson's summary judgment.  Further, Halmekangas questions why Harelson has only now been able, after the validity of the McKenzie Affidavit has been disproved, to file an affidavit based

on personal knowledge that he in fact mailed the documents including the property description to Halmekangas in January and March of 2005. Halmekangas asserts that this affidavit flies in the face of Harelson's deposition testimony, in which he admitted he had no record of what he received from ANPACLA and/or forwarded to Halmekangas. If he had no personal knowledge then, and thus had to rely on the McKenzie Affidavit in lieu of his personal knowledge, Halmekangas argues that it is a sham for him to now suddenly claim that he remembers after review of essentially the same documents that have been produced all along.

Further, Halmekangas claims that Harelson's arguments based on the lack of original documents and the discrepancies between the October 2007 production and the October 2007 email are a red herring. First, Halmekangas argues that Harelson and ANPACLA have failed to show how the original documents are at all relevant to their motions for summary judgment.[12] Further, Halmekangas argues that the suggestion of spoliation of documents is improper. First, Halmekangas notes that the copy of the property description in his (Halmekangas') own counsel's file includes the date stamp at the top, albeit partially cut off. Thus, Halmekangas argues that Harelson's own counsel may have inadvertently cut off the date stamp while making reproductions

---

[12] This argument apparently ignores the fact that the Court considered these original documents relevant when it ordered their production in the February 4, 2009 minute order.

for Harelson's Deposition.  In the end, Halmekangas argues that Harelson and ANPACLA's argument based on the date stamp issue is disingenuous, since it was this same print date that they both relied on as the mailing date in the McKenzie Affidavit.

Finally, Halmekangas notes that he suspected that Harelson would attempt to change his story regarding the mailing dates, and thus sought his deposition.  However, Harelson's counsel denied the request, and stated that Harelson's testimony has not changed on the issue.  Halmekangas asserts that Harelson's testimony has changed in light of his affidavit in these proceedings, and thus his supplemental deposition should be taken to determine if he in fact has personal knowledge regarding the mailing date(s) of the property description.

Harelson responds that Halmekangas' counsel could have, but did not, ask Harelson at his deposition whether he specifically remembered mailing the property description sheet.  However, Harelson also notes that he deposed that he forwarded to Halmekangas the original policy and declarations sheet, as well as every other document ANPACLA sent him.  Next, Harelson reiterates his contention that counsel for Halmekangas produced documents with the print date missing specifically to prevent Harelson from identifying those documents.

Further, Harelson disputes Halmekangas' argument that his prior deposition testimony is at odds with his recently submitted

affidavit regarding his mailing of policy documents.  Harelson

reiterates that he has consistently affirmed that he forwarded

all documents to Halmekangas as they were mailed to him by

ANPACLA.  Further, Harelson argues that if the documents in

Halmekangas' possession *that included the date stamps* had been

produced, both Harelson and Halmekangas could have been

questioned at their depositions regarding the print and mailing

dates of those documents, including the crucial property

description page of the declarations sheet.  However, the copies

provided did not include the date stamp, and as such Harelson was

not and could not be asked questions accordingly.  More

importantly, Halmekangas, whose denial or failure to remember

receipt of the property description is the entire issue in these

motions, was unable to be questioned with the benefit of the

dated documents.[13]  Harelson argues that now that he has finally

reviewed the date stamped documents, which were produced only as

of March 17, 2009 via the October 2007 email from Halmekangas to

counsel, he has been able to properly execute an affidavit

indicating that he mailed the documents, including the property

description, in January and March of 2005.  Thus, despite the

total absence of any originals, the initial production of

---

[13]  See Rec. Doc. 106-4, pp. 73-74, which includes the
relevant deposition colloquy between counsel for Harelson and
Halmekangas regarding the date stamp on the documents reviewed at
the deposition.

documents with the date stamp cut off, and the revelation that
Halmekangas' counsel actually had a partially date stamped copy
that was not produced, Harelson can now safely say that the
documents were mailed in early 2005.

Finally, to the extent that Halmekangas disputes Harelson's
affidavit filed in these proceedings, Harelson argues that no
such affidavit was necessary previously because Halmekangas
admitted to receipt of the policy and declarations page in his
deposition. Further, Halmekangas should not be allowed to re-
depose Harelson because the issues on which he wishes to re-
depose Harelson are the very issues that could have been
addressed by Halmekangas' counsel at Harelson's first deposition
and which would have been clarified by proper production of the
documents that his counsel clearly had.

## DISCUSSION

ANPACLA's motion for summary judgment depends on the
validity of the Court's November 25, 2008 Order and Reasons
granting summary judgment on Halmekangas' claims against Harelson
based on peremption under Louisiana Revised Statutes §9:5606. As
noted by the Fifth Circuit:

> If courts did not impute the protections of section
> 9:5606 to insurers in cases where their liability arises
> solely from the misconduct of their agents, plaintiffs
> could sue insurers beyond the one-year-peremptive period,
> leaving insurers with no recourse against their culpable
> agents. See Life Investors Ins. Co. of Am. v. John R.
> Young Chevrolet, Inc., 730 So.2d 519, 520-521 (La. Ct.
> App.1999) (noting that a suit for contractual indemnity

23

is a suit for damages and that section 9:5606 prohibits
all suits for damages after one year based upon contract
or otherwise).

Bernhard Mech. Conts., Inc. v. St. Paul Cos., 2008 WL 3244145, *5
(5th Cir. 2008) (citing Kobeszko v. State Farm Fire & Cas. Co.,
No. 06-7678 (E.D. La. May 18, 2007).  Thus, if the summary
judgment granted in favor of Harelson is valid, ANPACLA's motion
should also be granted, as Halmekangas' claims against ANPACLA
are purely derivative of Harelson's alleged error in placing
inappropriate coverage on Halmekangas' property.  See Bernhard,
2008 WL 3244145 at *5 (noting that §9:5606 should not apply to
insulate insurer's from liability only when "the insurer's
potential liability arises solely from its own misconduct and the
insurer's agent merely facilitated the underlying transaction").

    As such, the Court will first address Halmekangas' third
attempt to avoid summary judgment of his claims in favor of
Harelson.

    **A.   Rule 60(b)(2) & (3) Standards**

    Halmekangas seeks an order vacating the Court's Order and
Reasons of November 25, 2008, based on the alleged
misrepresentation by Harelson and ANPACLA in submitting and
relying on the McKenzie Affidavit in support of their motions for
summary judgment.  Rule 60 allows a court to provide relief to a
party from a prior ruling or judgment.  Fed. R. Civ. P. R. 60(b).
Halmekangas seeks relief from the November 25, 2008 Order and

Reasons under subsections (b)(2) and (3) of Rule 60.  Subsection

(b)(2) allows a court to vacate a previous order upon discovery

of new evidence which was previously undiscoverable with due

diligence.  Fed. R. Civ. P. R. 60(b)(2).  "To prevail on a motion

for a new trial based on newly discovered evidence under Rule

60(b)(2), the movant must show that the evidence was discovered

following the trial, that he used due diligence to discover the

evidence at the time of the trial, that the evidence is not

merely cumulative or impeaching, that it is material, and that a

new trial in which the evidence was introduced would probably

produce a different result."  <u>Johnson Waste Materials v.</u>

<u>Marshall</u>,  611 F.2d 593, 597 (5th Cir. 1980); see also <u>Smith v.</u>

<u>United States Postal Service</u>, 2007 WL 891231, * 3 (N.D. Tex. Mar.

23, 2007).  The Fifth Circuit has characterized a Rule 60(b)(2)

motion as an "extraordinary motion," that requires parties to

meet "a heavy burden to demonstrate that they have satisfied the

requirements" outlined above.  <u>Johnson Waste</u>, 611 F.2d at 597.

Alternatively, Rule 60(b)(3) allows for vacation of a prior

order on a finding of "fraud (whether previously called intrinsic

or extrinsic), misrepresentation, or misconduct by an opposing

party."  Id.  "A party making a Rule 60(b)(3) motion must

establish (1) that the adverse party engaged in fraud or other

misconduct, and (2) that this misconduct prevented the moving

party from fully and fairly presenting [her] case."  <u>Hesling v.</u>

CSX Transp., Inc., 396 F.3d 632, 641 (5th Cir. 2005). "A [R]ule 60(b)(3) assertion must be proved by clear and convincing evidence," and the remedy provided by the rule "is not intended to afford parties relief from judgments which may be factually incorrect, only to grant parties relief from verdicts which are unfairly obtained." Jacobs v. N. King Shipping Co., Ltd., 1998 WL 164853, 1 (E.D. La. Apr. 7, 1998) (quotations omitted). Thus, wen a party is capable of fully and fairly presenting his case notwithstanding "fraud, misrepresentation, or other misconduct," the trial court does not err when it denies a Rule 60(b)(3) motion. See Rozier v. Ford Motor Co., 573 F.2d 1332 (5th Cir.1978). In the end, if the court's prior decision was not changed or affected in any material way by the alleged fraud, misrepresentation, or misconduct, Rule 60(b)(3) relief is unwarranted. See Veal v. Schlumberger Technology Corp., 2007 WL 2220951, *2 (S.D. Tex. July 31, 2007).

**B.   Halmekangas' Rule 60 Motion**

The current motions constitute the third time that this Court has addressed essentially the same issue in this case, namely whether and when Halmekangas received and reviewed the property description document that formed the basis of the Court's grant of summary judgment in favor of Harelson under § 9:5606. As an initial matter, the Court disagrees with Halmekangas' contention that the November 25, 2008 order was

based *solely* on the McKenzie Affidavit. While it is true that
the Court relied *in part* on the McKenzie Affidavit for its
finding of peremption, the affidavit was by no means the sole or
even the most substantial basis for the Court's ruling. Rather,
it was the equivocal and ultimately illogical deposition
testimony of Halmekangas himself that led to the Court's original
ruling.

It is true that the McKenzie Affidavit was incorrect in its
assertions. However, as the record now stands after the Court's
Minute Order of February 4 and the supplemental discovery and
briefing on the current motions, the Court is fully convinced
that its November 25, 2008 Order and Reasons was valid. Notably,
as a result of the updated discovery and briefing (namely the
production of the original October 2007 email between Halmekangas
and his counsel with the policy and declarations sheet attached),
it has come to light that the original copies of Halmekangas'
policy and declarations sheet, including the property description
at issue in this case, were date stamped as printed on January 3,
2005 and March 22, 2005. These date stamps, in combination with
Harelson's deposition testimony and affidavit statement that he
mailed such documents to Halmekangas on those dates, as well as
Halmekangas' deposition testimony and interrogatory responses
indicating that he reviewed policy documents in January and March
of 2005, reveal that Halmekangas did in fact have the property

descriptions at issue more than one year prior to filing his suit. In addition, Harelson's signature appears on the bottom of the first page of both the January and March 2005 declarations sheets. As noted in Harelson's briefing on these motions, this signature proves that Halmekangas had the first page of the declaration sheet in both January and March of 2005, because Harelson did not make copies of the items he mailed, and thus only Halmekangas could have had the signed documents. These signatures, in combination with the date stamps at the top of both property descriptions in the January and March declarations sheets, prove beyond any reasonable doubt that Halmekangas received and reviewed the documents in early 2005 and more than one year prior to filing suit.

Contrary to Halmekangas' "red herring" characterization of the discrepancies between the October 2007 document production and the recent production of the actual October 2007 email on which that production was based, the Court finds that those discrepancies cut to the heart of this matter. Specifically, the lack of date stamps on the property description documents produced in October 2007, which were referenced in both Harelson and Halmekangas' depositions, led to the present morass in this case. Halmekangas argues that the date stamps may have been cut off by counsel for Harelson when he reproduced them. Harelson argues that the date stamps may have been cut off by Halmekangas'

counsel before the October 2007 production.  Further, both Halmekangas and Harelson argue that the other's counsel should have known that the date stamp was cut off and taken steps to remedy the situation.  In the Court's opinion, these disputes constitute a full scale assault on a brigade of straw men.  In the end, the record presently before the Court indicates that the property description pages were date stamped on January 3 and March 22, 2005, were attached to pages signed by Harelson, and were included among the documents that Halmekangas has admitted to reviewing in early 2005.  This record renders the McKenzie Affidavit, which itself was previously only a partially probative factor in the summary judgment record, *completely irrelevant*. Furthermore, Harelson's affidavit, executed after reviewing the versions of the policy and declarations sheets culled from the October 2007 email from Halmekangas to his counsel, indicates that he remembers mailing all the documents to Halmekangas in January and March of 2005.  This affidavit is fully consistent with Harelson's earlier deposition testimony that he mailed all policy documents forwarded to him by ANPACLA to Halmekangas. Thus, the Court finds that Halmekangas had the property description pages in his possession at least in early January and March of 2005, more than one year prior to the suit filed in June of 2006.  As such, Halmekangas' motion for relief under Rule 60(b)(2) and (3) should be denied, notwithstanding the problems

with the McKenzie Affidavit.  Specifically, the Court finds under Rule 60(b)(2) that Halmekangas has not met the heavy burden of demonstrating that the allegedly new evidence regarding the McKenzie affidavit is material.[14]  Furthermore, the Court finds under Rule 60(b)(3) that Halmekangas has not produced clear and convincing evidence that the McKenzie Affidavit was submitted in bad faith, and further finds that he was capable of fully and fairly presenting his case despite the problems with the McKenzie Affidavit.

Additionally, Halmekangas' argument that Harelson's affidavit submitted in the supplemental briefing on the present motions somehow contradicts or improperly changes his prior deposition testimony is flatly incorrect in the Court's opinion. Harelson deposed based on personal knowledge in January of 2008 that he forwarded all documents to Halmekangas that were sent to him by ANPACLA.  Although he testified further that he could not specifically recall the specific documents he sent, he unequivocally indicated that he sent all policy documents.  This testimony is *clarified*, not contradicted, by Harelson's affidavit, which was submitted with the benefit of Harelson's review of the date stamped versions of the documents that were

---

[14]  The Court notes that if any evidence is in fact new and material to this case, it is the recently produced original versions of the documents attached in Halmekangas' October 2007 email to counsel, which the Court finds crucial to its present ruling.

previously unavailable.

Furthermore, the Court disagrees with Halmekangas' argument
regarding the irrelevance of the complete absence of original
versions of the policy documents that were included in the email
from Halmekangas to his counsel. To the contrary, it was the
lack of original documents, or at least the copies of those
original documents as they appeared in the email from Halmekangas
to his counsel in 2007, that has brought this case to its third
iteration before the Court. While Halmekangas may have hoped
that this third attempt at avoiding summary judgment might
succeed in light of the issues with the McKenzie Affidavit, it
has unfortunately brought to light even further evidence of what
can be most kindly described as carelessness on the part of
counsel, and at worst unprofessional and improper handling of the
parties' case. Nonetheless, and as discussed at length above,
the present record satisfies the Court that its November 25, 2008
Order and Reasons was correct and proper.

In the context of summary judgment analysis, "[a] factual
dispute is 'genuine' where a reasonable jury could return a
verdict for the non-moving party." Weber v. Roadway Exp., Inc.,
199 F.3d 270, 272 (5th Cir. 2000). "If the record, taken as a
whole, could not lead a rational trier of fact to find for the
non-moving party, then there is no genuine issue for trial and
summary judgment is proper." Id. The non-moving party's burden is

not satisfied with 'some metaphysical doubt as to the
material facts,' by 'conclusory allegations,' by
'unsubstantiated assertions,' or by only a 'scintilla' of
evidence. [The courts] resolve factual controversies in
favor of the nonmoving party, but only when there is an
actual controversy, that is, when both parties have
submitted evidence of contradictory facts. *[The courts]
do not, however, in the absence of any proof, assume that
the nonmoving party could or would prove the necessary
facts.*

Little, 37 F.3d 1075 (emphasis in original)(citations omitted).

This was the standard applied by the Court in its November 25,

2008 Order and Reasons, and this standard again supports the

Court's finding of preemption on the present and updated summary

judgment record in the context of Halmekangas' Rule 60 motions.

The Court noted in its previous order that "it borders on the

irrational to assume that Halmekangas did in fact have the first

page of the declaration sheet prior to the storm, as evidenced by

his handwritten notes on that page, but did not contemporaneously

have in his possession the sequentially numbered pages of the

declaration sheet that did contain the allegedly erroneous

description." Rec. Doc. 123. This finding has only been

bolstered by the updated record in this case, including the newly

produced versions of the policy and declarations sheet attached

in the October 2007 email from Halmekangas to his counsel, as

well as the Harelson affidavit submitted with the briefing on the

present motions.[15]

---

[15] Accordingly, and to the extent it is consistent with the
Court's analysis and findings on the present motions, the Court

In sum, the Court finds that Halmekangas has not met his burden under either Rule 60(b)(2) or (b)(3) to support an order vacating the November 25, 2008 Order and Reasons granting summary judgment in favor of Harelson.

Furthermore, because the summary judgment in favor of Harelson is valid, ANPACLA is entitled to summary judgment under the Fifth Circuit's decision in <u>Bernhard</u>.  As such, the Court need not reach ANPACLA's arguments based on the supplemental affidavits regarding a presumption of mailing based on evidence of standard procedures.

Finally, the Court finds that the cases relied on by Halmekangas in support of his argument that Harelson lulled him into complacency are distinguishable.  Specifically, all the cases cited by Halmekangas involved claims based on an agent's failure to address policy *exclusions* of which the insured was unaware, or to procure specific coverages.  See, e.g., <u>Romero v. Travelers Indem. Co. of Conn.</u>, 2006 WL 3692773 (E.D. La. Dec. 12, 2006) (flood exclusion); <u>Hoffman v. Alliance Ins. Agency Servs., Inc.</u>, 2007 WL 2088373 (E.D. La. July 19, 2007) (failure to procure contents coverage under flood policy); <u>So. Athletic Club, LLC v. Hanover Ins. Co.</u>, 2006 WL 2583406 (E.D. La. 2006) (flood and other exclusions).  Unlike these cases, which involved

---

re-adopts its Order and Reasons of November 25, 2008, excluding any discussion of or references to the McKenzie Affidavit.

technical exclusions and/or elements of coverage in insurance policies, Halmekangas' claims are based on alleged errors regarding the fundamentally untechnical and clearly discernible description of his own property in the ANPACLA policy and declarations sheet.  Thus, while an agent may be capable of lulling an insured into complacency with respect to detailed and sometimes hyper-technical policy exclusions, the Court finds that situation drastically different from a claim that an agent lulled an insured into complacency regarding the size and floor plan of the insured's own home.  As such, Halmekangas' reliance on these cases is unavailing.

     **C.    Halmekangas' Rule 56(g) Motion for Sanctions**

As an initial matter, and as previously suggested by the Court, the astoundingly convoluted facts and allegations in this case stem in large part from the carelessness, craftiness, or some combination of both, on the part of counsel for all parties in this case.  Nonetheless, the Court finds that Halmekangas' request for sanctions under Rule 56(g) is inappropriate and should be denied.

Rule 56(g) provides that "[i]f satisfied that an affidavit under this rule is submitted in bad faith or solely for delay, the court must order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result."  Fed. R. Civ. P. R. 56(g).  An essential finding,

therefore, in a Rule 56(g) motion for sanctions is bad faith on the part of a party in submitting a false affidavit. See, e.g., Miller v. Home Depot U.S.A., Inc., 1996 WL 457403, *2 (5th Cir., July 15, 1996). A decision granting or denying Rule 56(g) sanctions is reviewed for abuse of discretion. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 349 (5th Cir. 2007).

While the McKenzie Affidavit was incorrect when initially submitted in support of Harelson's motion for summary judgment, the Court does not find that it was submitted in bad faith. See, e.g., Turner, 476 F.3d at 349 (affirming denial of Rule 56(g) sanctions based on inconsistencies between affidavit and prior deposition testimony when the inconsistencies were indirect differences between later general and earlier specific issues). The Court's review of the record reveals that counsel for ANPACLA and Harelson apparently informed the Court as soon as the issues with the McKenzie Affidavit became apparent, and did so despite the fact that the McKenzie Affidavit had been only a partial basis for the Court's Order and Reasons granting Harelson's motion for summary judgment on peremption grounds. Furthermore, the Court finds Halmekangas' arguments regarding bad faith on the part of ANPACLA and Harelson to be nothing more than innuendo and insinuation, unsupported by any facts suggesting bad faith. Finally, and although the issue is not squarely before the Court, the Court finds Halmekangas' Rule 56(g) request for sanctions a

bit presumptuous in light of the significant discrepancies between the documents provided in the October 2007 production and the recently revealed versions of those same documents from the original October 2007 email between Halmekangas and counsel. Regardless, the Court does not find that the McKenzie Affidavit was submitted in bad faith, and thus refuses to grant Halmekangas' request for sanctions under Rule 56(g). Accordingly,

**IT IS ORDERED** that Halmekangas' **Motion for Relief from this Court's 11/25/2008 Order and for Sanctions under Rule 56(g)** (Rec. Doc. 168) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that ANPACLA's **Motion for Summary Judgment** (Rec. Doc. 146) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that all claims asserted by Halmekangas against ANPACLA in this matter are hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this __9th__ day of ____April____, 2009.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE